IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | |
|---|---|
| Checkeeper, LLC,<br><br>          Plaintiff,<br><br>v.<br><br>Sabeer Nelliparamban and<br>OnlineCheckWriter.com LLC,<br><br>          Defendants. | CIVIL ACTION NO. _____ |

## COMPLAINT

COMES NOW Plaintiff Checkeeper, LLC ("Plaintiff"), by and through its undersigned counsel, and for its Complaint against Defendants Sabeer Nelliparamban ("Mr. Nelliparamban") and OnlineCheckWriter.com LLC ("OCW") (collectively, "Defendants") states as follows:

### PARTIES, JURISDICTION AND VENUE

1.      Plaintiff is a limited liability company organized and existing under the laws of the State of South Carolina. Plaintiff's principal place of business is located within the territorial jurisdiction of Greenville County, South Carolina.

2.      Mr. Nelliparamban is a natural person over the age of eighteen and, upon information and belief, a citizen of the State of Texas.

3.      OCW is a limited liability company organized and existing under the laws of the State of Texas. OCW's principal place of business is located within the State of Texas. OCW may be served through its registered agent for service of process, Sabeer Nelliparamban at 5007 Richmond Rd., Tyler TX 75703.

4. This Court has subject matter jurisdiction over this dispute under 28 U.S.C. § 1331, which confers original jurisdiction upon district courts for causes of action arising under federal law.

5. Pursuant to 28 U.S.C. § 1337, this Court has supplemental jurisdiction over Plaintiff's state law claim, which arises out of the same facts as Plaintiff's federal law claims and therefore forms part of the same case or controversy.

6. This Court has personal jurisdiction over the Defendants by virtue of the Defendants' business activities and tortious conduct in the State of South Carolina.

7. Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred in this judicial district.

## STATEMENT OF FACTS

8. Checkeeper is an online check printing and fulfillment application created by Plaintiff, located at checkeeper.com.

9. Plaintiff holds a valid copyright in Checkeeper, and has a pending federal copyright application for Checkeeper's front-end source code, which it filed on May 18, 2018.

10. One of Plaintiff's founders, Mr. Rockwell, recently discovered a competing website called Online Check Writer, located at onlinecheckwriter.com.

11. Online Check Writer is owned by OCW, which, in turn, is owned and operated by one of Plaintiff's customers, Mr. Nelliparamban.

12. Mr. Rockwell browsed Online Check Writer's application and noticed that its interface is almost identical to Cheekeeper's. For instance:

- Online Check Writer utilizes the same font face as Checkeeper (Montserrat), as well as the same font sizes;

- The interface elements are in the exact same configuration as Checkeeper's – for example, "Template Elements" is on the top right;

- The dimensions of Online Check Writer's interface elements are exactly the same as Checkeeper's;

- Online Check Writer copied Checkeeper's images and icons – for instance, the blank check image, and the icons in the template section headers; and

- Most of Online Check Writer's verbiage and instructions are word-for-word identical to Checkeeper's.

13. These uncanny similarities led Mr. Rockwell to inspect Online Check Writer's front-end code.

14. Mr. Rockwell discovered that Online Check Writer's interface was comprised primarily of custom HTML, CSS, JavaScript, and images copied directly from Checkeeper.

15. It is evident that Online Check Writer stole Checkeeper's front-end code for several reasons, including but not limited to the following:

- Online Check Writer contains numerous references to HTML elements and third-party interfaces that Online Check Writer does not even use. For instance:
    - Online Check Writer copied code from Checkeeper referring to integrations with Xero (an accounting platform) and Olark (a chat platform). However, Online Check Writer does not use these integrations. There is no reason Online Check Writer would refer to them unless it simply copied Checkeeper's code.

- o Checkeeper's logo is not displayed through an image file, but rather, rendered through code. Immediately preceding that code, Mr. Rockwell included a comment in his unique programming voice:

  `<!—gonna be bad-ass and make the logo out of html -->`

  Online Check Writer's code contains that exact same comment, despite the fact that its logo is displayed through an image file. There is no reason Online Check Writer would include this comment unless it simply copied Checkeeper's code.

- o Online Check Writer copied JavaScript from Checkeeper that allows a user to change the font size of a check, but Online Check Writer's interface does not even contain this feature. There is no reason Online Check Writer's JavaScript would refer to this feature unless it was simply copied-and-pasted from Checkeeper.

- Online Check Writer's code contains other unique comments taken word-for-word from Checkeeper, including misspellings, profanity, and references to Mr. Rockwell ("JROCK"):

  ```
  /* JROCK TOOK THIS OUT, BECUASE THE RESIZBLE WOULDN'T
  FIRE WITH IT IN. NOT SURE IF ITS NECESSARY ALL IT DOES
  IS UPDATE THE TEXT OF THE SHIT DRAGGING TO SAY
  "SAVING", AND THEN BACK WHEN DONE.  IT MIGHT BE BEST
  TO JUST HAVE A LITTLE THING IN THE BOTTOM RIGHT THAT
  DOES THIS EXACT SAME THING, BUT NOT WITHIN AN ELEMENT.
  NOTE THE UNBIND() ABOVE TOO.*/
  ```

  One comment in Online Check Writer's code even refers to "zazzle," which was a working title Checkeeper's founders used to refer to a new version of Checkeeper they were planning to release:

  ```
  //for zazzle, figure out a percentage location
  ```

- Online Check Writer's HTML elements use the exact same naming convention and nesting structure as Checkeeper's.

- Online Check Writer completely copied Checkeeper's drag-and-drop template editor feature, which took Mr. Rockwell countless hours to develop.

- Online Check Writer's cascading style sheet bears Mr. Rockwell's unique coding thumbprint. For example, out of dozens (if not hundreds) of possible CSS properties, Online Check Writer defines the exact same 16 properties as Checkeeper for its submit buttons. It also organizes these properties in the exact same order as Checkeeper, despite the fact that there are literally **trillions** of ways they could be organized.

16. Upon information and belief, because Mr. Nelliparamban was a customer of Plaintiff, he had access to Checkeeper's front-end source code and intentionally copied it for the benefit of himself and his company, OCW.

17. As the owner of Checkeeper, Plaintiff has the exclusive right to reproduce it, distribute it, and create derivative works from it.

18. Defendants had no right to copy Checkeeper's interface design or source code.

19. Online Check Writer could have chosen any number of unique configurations for its interface layout, but instead chose to copy Checkeeper's.

20. On March 5, 2018, Plaintiff's counsel sent a cease-and-desist letter to Defendants, but Defendants have continued their infringing activities.

21. Upon information and belief, Defendants have profited from their intentional infringement of Plaintiff's intellectual property.

22. Defendants' actions are causing, and unless restrained, will continue to cause damage and immediate irreparable harm to Plaintiff for which Plaintiff has no adequate remedy at law.

## COUNT I.
## Copyright Infringement, 17 U.S.C. § 101, *et. seq.*

23. Plaintiff realleges all preceding paragraphs as if fully restated verbatim herein.

24. Checkeeper is an original literary work containing copyrightable subject matter for which copyright protection exists under the Copyright Act, 17 U.S.C. § 101, *et. seq.*

25. Defendants have directly infringed Plaintiff's exclusive rights in Checkeeper in violation of Section 501 of the Copyright Act, 17 U.S.C. § 501.

26. On information and belief, Defendants' infringing conduct was and continues to be willful.

27. As a direct and proximate result of Defendants' infringing conduct, Plaintiff has been harmed and is entitled to damages in an amount to be proven at trial.

28. Pursuant to 17 U.S.C. § 504(b), Plaintiff is also entitled to recovery of Defendants' profits attributable to Defendants' infringing conduct, and an accounting of and a constructive trust with respect to such profits.

29. Alternatively, Plaintiff is entitled to the maximum statutory damages pursuant to 17 U.S.C. § 504(c) for Defendants' infringing conduct.

30. Plaintiff is further entitled to its attorneys' fees and costs.

31. As a direct and proximate result of the Defendant's infringing conduct alleged herein, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.

32. Unless Defendants' infringing conduct is enjoined by this Court, Defendants will continue to infringe Checkeeper.

WHEREFORE, Plaintiff demands judgment against Defendants as follows: for injunctive relief temporarily and permanently enjoining Defendants' infringing conduct; for an accounting of Defendants' profits attributable to the infringement; for compensatory damages and disgorgement of profits in an amount to be determined at trial, or alternatively, statutory damages; for attorneys' fees and costs; and for such other, further and different relief as this Court deems just and proper.

## COUNT II.
### Trade Dress Infringement, 15 U.S.C. § 1125 *et seq.*

33. Plaintiff realleges all preceding paragraphs as if fully restated verbatim herein.

34. Checkeeper's interface design is protectable trade dress under Section 43(a) of the Lanham Act because it is inherently distinctive and "non-functional" for purposes of 15 U.S.C. § 1125(a)(3).

35. Plaintiff is the owner of Checkeeper's trade dress.

36. Defendants are using a trade dress that is likely to cause consumer confusion with Plaintiff's trade dress.

37. As a direct and proximate result of Defendants' infringing conduct, Plaintiff has been harmed and is entitled to damages in an amount to be proven at trial.

38. On information and belief, Defendants' infringing conduct was and continues to be willful, entitling Plaintiff to treble damages.

39. Plaintiff is also entitled to recovery of Defendants' profits attributable to Defendants' infringing conduct, and an accounting of and a constructive trust with respect to such profits.

40. Plaintiff is further entitled to its attorneys' fees and costs.

41. As a direct and proximate result of the Defendant's infringing conduct alleged herein, Plaintiff has sustained and will continue to sustain substantial, immediate, and irreparable injury, for which there is no adequate remedy at law.

42. Unless Defendants' infringing conduct is enjoined by this Court, Defendants will continue to infringe Checkeeper.

WHEREFORE, Plaintiff demands judgment against Defendants as follows: for injunctive relief temporarily and permanently enjoining Defendants' infringing conduct; for an accounting of Defendants' profits attributable to the infringement; for compensatory damages, treble damages, and disgorgement of profits in an amount to be determined at trial; for attorneys' fees and costs; and for such other, further and different relief as this Court deems just and proper.

## COUNT III.
## South Carolina Unfair Trade Practices Act, S.C. Code § 39-5-10 *et seq.*

43. Plaintiff realleges all preceding paragraphs as if fully restated verbatim herein.

44. Title 39 of the South Carolina Code prohibits the commission of unfair or deceptive acts or practices in the conduct of any trade or commerce.

45. Defendants are engaged in trade or commerce within the meaning of the South Carolina Unfair Trade Practices Act.

46. Defendants committed at least one unfair or deceptive act toward Plaintiff in the course of their business activities.

47. As a direct and proximate consequence of the unfair or deceptive act(s) that Defendants perpetrated against Plaintiff, Plaintiff has sustained, and continues to sustain, significant pecuniary damages.

48.     The types of unfair or deceptive act(s) that Defendants have perpetrated against Plaintiff are likely to have an adverse impact on the public interest, including but not limited to causing consumer confusion.

49.     Defendants have repeated, and likely will continue to repeat, their wrongful conduct by advertising their infringing service to potential customers.

50.     Plaintiff is informed and believes that, due to the circumstances of this dispute and the nature of the act(s) involved, Defendants' wrongful conduct was perpetrated with a willful or knowing intent, entitling Plaintiff to treble damages.

WHEREFORE, Plaintiff demands judgment against Defendants for compensatory and treble damages in an amount to be determined at trial, attorneys' fees, costs, and for such other, further and different relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

The undersigned counsel for Plaintiff requests a trial by jury on all issues so triable.

CAMPBELL TEAGUE LLC

*/s/ George Campbell*
George Campbell (12374gc)
16 W. North St.
Greenville, South Carolina 29601
PH:   (864) 326-4186
george@campbellteague.com
Attorney for Plaintiff
CHECKEEPER, LLC